_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
March 09, 2020

GARMAN TURNER GORDON LLP
GREGORY E. GARMAN
Nevada Bar No. 6654
E-mail:  ggarman@gtg.legal
GABRIELLE A. HAMM
Nevada Bar No. 11588
E-mail: ghamm@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail:  tpilatowicz@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725-777-3000 / Fax: 725-777-3112
[Proposed] *Attorneys for Debtors*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.: BK-20-11016-MKN<br>Chapter 11 |
| ALPHA GUARDIAN, a Nevada Corporation, | |
| ☐ Affects this Debtor. | Jointly administered with: |
| ☒ Affects all Debtors. | |
| ☐ Affects Stack-On Acquisition Parent Corp. | Stack-On Acquisition Parent Corp.,<br>    Case No. BK-20-11017-MKN; |
| ☐ Affects Stack-On Products Co. | Stack-On Products Co.,<br>    Case No. BK-20-11018-MKN; |
| ☐ Affects Cannon Security Products, LLC | Cannon Security Products, LLC,<br>    Case No. BK-20-11019-MKN; |
| ☐ Affects Cannon Safe Inc. | Cannon Safe Inc.,<br>    Case No. BK-20-11020-MKN; |

| | |
|---|---|
| ☐ Affects Gunvault USA, Inc. | Gunvault USA, Inc.,<br>    Case No. BK-20-11021-MKN; and |
| ☐ Affects Remline Industries, Inc.<br><div align="center">Debtors.</div> | Remline Industries, Inc.,<br>    Case No. BK-20-11022-MKN<br><br>Interim Hearing:<br>Date:  March 2, 2020<br>Time  1:30 p.m.<br><br>**Final Hearing**:<br>**Date:  March 27, 2020**<br>**Time  10:30 a.m.** |

### INTERIM ORDER:  (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING, (II) GRANTING LIENS AND ADMINISTRATIVE EXPENSE CLAIMS, (III) AUTHORIZING DEBTORS' USE OF CASH COLLATERAL, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF

Upon the motions (collectively, the "Motion") of debtors and debtors-in-possession Alpha Guardian, a Nevada Corporation ("Alpha Guardian"), Stack-On Acquisition Parent Corp., a Nevada Corporation ("Stack-On Parent"), Stack-On Products Co. ("Stack-On"), an Illinois company, Cannon Security Products, LLC, a Nevada limited liability company ("Cannon Security"), Cannon Safe Inc., a Nevada corporation, ("Cannon Safe"), Gunvault USA, Inc., a Nevada corporation ("GunVault"), and Remline Industries, Inc. ("Remline," and together with Alpha Guardian, Stack-On Parent, Stack-On, Cannon Security, Cannon Safe, and GunVault, the "Debtors") for entry of interim and final orders pursuant to Sections[1] 105, 361, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 9014, and Local Rule 4001, requesting the Court to, among other things,

(i)     Approve the *Fifth Amendment to Credit Agreement* (the "Fifth Amendment") by and between the Debtors and Alpha Bravo Holding Company, Inc., as lender and administrative and collateral agent ("Lender" or "Alpha Bravo"), and pursuant to the Fifth Amendment and related Loan Documents,[2] authorize Debtors to obtain credit and incur debt in the

---

[1] Unless otherwise stated, all references to "Section" herein shall be to title 11 of the U.S. Code (the "Bankruptcy Code"); all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" or "LR" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

[2] All capitalized, undefined terms herein shall have the meanings ascribed to them in the Motion.

GARMAN TURNER GORDON<br>7251 Amigo Street, Ste. 210<br>Las Vegas, NV 89119<br>725-777-3000

form of a multiple draw term loan credit facility (the "DIP Financing") in the aggregate commitment of up to $16,750,000, comprised of up to $4,000,000 in post-petition funding and a roll-up of $12,750,000 in Prepetition Obligations, with $1,100,000 authorized on an interim basis pursuant to the terms of this order (the "Interim Order");

(ii)    As security for all obligations of the Debtors under and with respect to the Initial Draw and this Interim Order (collectively, the "DIP Obligations"), the Debtors' use of Cash Collateral and the diminution in value of the Prepetition Collateral, and the priming of the Prepetition Liens by the DIP Liens, grant (i) super-priority administrative expense claims with priority over all other administrative expenses under Section 364(c)(1) of the Bankruptcy Code, subject to the Carve Out, (ii) automatically perfected security interests and liens under Section 364(c)(2) and (c)(3) of the Bankruptcy Code in property of the Debtors' estates, including, without limitation, all Cash Collateral, and (iii) valid, binding, continuing, enforceable, fully perfected first priority senior priming liens upon and security interest in all of the Debtors' right, title and interest in, the Prepetition Collateral, junior only to any Existing Liens under Section 364(d);

(iii)    Authorize (a) the use of the proceeds of the Initial Draw consistent with the terms and conditions of the Fifth Amendment and in accordance with, and limited by, the Budget (subject to Permitted Variances) during the Interim Period, and (b) upon entry of the final order on the Motion (the "Final Order"), the automatic conversion of the Existing Superpriority Term Loans Balance in the aggregate amount of $12,750,000 to DIP Obligations deemed advanced under the Fifth Amendment after the Petition Date (the "Partial Roll-Up");

(iv)    Authorize Debtors' use of the Cash Collateral in which the Lender has an interest;

(v)    Modify the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Fifth Amendment and the Interim Order;

(vi)    Schedule a final hearing (the "Final Hearing") to consider entry of the relief requested in this Motion on a final basis; and

(vii)    Waive any stay of the effectiveness of the Interim and Final Orders and

provide for immediate effectiveness of this Interim Order.

Due and sufficient notice of the Motion and the Interim Hearing having been provided by the Debtors; and after considering all the pleadings filed with this Court; and upon the record made by the Debtors at the Interim Hearing; and the Court having found and determined that, subject to the terms of this Interim Order, the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and after due deliberation and consideration and good and sufficient cause appearing therefor, the Court hereby finds:[3]

A.    **Debtors' Chapter 11 Cases**.  On February 24, 2020 (the "<u>Petition Date</u>"), Debtors filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned cases (the "<u>Chapter 11 Cases</u>").  Debtors have moved for joint administration of the Chapter 11 Cases.  The Debtors are continuing to operate their business and manage their property as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner.

B.    **Jurisdiction; Venue**.  This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief sought herein are Sections 105, 361, 363, and 364 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b), and 9014, and Local Rule 4001.  Venue of the Chapter 11 Cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Notice**.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).  Notice of the Interim Hearing and the emergency relief requested in the Motion was provided by the Debtors by electronic mail, overnight courier, hand delivery or electronic delivery through the Court's CM/ECF system, on February 26, 2020, to: (i) the Office of the United States Trustee for the District of Nevada (the "<u>U.S. Trustee</u>"), (ii) the Debtors' consolidated 30 largest non-insider unsecured creditors, (iii) the Lender and counsel to the Lender, (iv) all other parties

---

[3] To the extent that the Court stated findings of fact and conclusions of law on the record at the Interim Hearing, such findings and conclusions are incorporated herein by reference in accordance with Fed. R. Civ. P. 52, made applicable pursuant to Fed. R. Bankr. P. 9014.

known by the Debtors to assert liens or security interests in the assets of the Debtors, (v) the Internal Revenue Service, and (vi) the United States Attorney for the District of Nevada (the "Noticed Parties").  Under the circumstances, such notice of the Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules.

D.    **Debtors' Stipulations With Respect to the Prepetition Obligations**.  Debtors admit, stipulate and agree that: (i) the Loan Documents are valid and enforceable by Lender; (ii) Lender duly perfected its liens upon and security interests in the Prepetition Collateral (the "Prepetition Liens"); (iii) the Prepetition Liens, as security for the obligations existing as of the Petition Date (the "Prepetition Obligations"), constitute valid, binding, continuing, enforceable, and fully-perfected first priority liens and security interests and are not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (iv) the Prepetition Obligations constitute legal, valid, and binding obligations of Debtors under the Loan Documents; (v) no offsets, defenses or counterclaims to the Prepetition Obligations exist; (vi) no portion of the Prepetition Obligations is subject to avoidance, disallowance, subordination (other than any such subordination agreement between Original Lenders and NAPS with respect to a portion of the Prepetition Obligations) or reduction pursuant to the Bankruptcy Code or non-bankruptcy law; and (vii) as of the Petition Date, Debtors were truly and justly indebted to Lender pursuant to the Loan Documents, without defense, counterclaim or offset of any kind, in the amount of no less than $118,000,000, plus all accrued and unpaid interest, fees and costs due under the Loan Documents.  Debtors irrevocably waive any right to challenge or contest the Prepetition Obligations or the Prepetition Liens granted pursuant to the Loan Documents.

E.    **Budget for DIP Financing**.  Attached hereto as **Exhibit A** is a 13-week cash flow forecast setting forth all projected cash receipts and cash disbursements (by line item) for a 13-week period beginning in the week commencing March 1, 2020 (the "Budget").  The Budget may be modified or supplemented from time to time, in accordance with the terms of the Fifth Amendment, by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtors and consented to by the Lender pursuant

to the Fifth Amendment, without subsequent notice to or order of the Court (each, an "Approved Budget"). The Budget is an integral part of this Interim Order and has been relied upon by the Lender in consenting to this Interim Order and to provide the DIP Financing. The Budget includes and contains the Debtors' best estimate of all operational receipts and allows for operational disbursements, fees, costs and other expenses that will be payable, incurred and/or accrued by any of the Debtors during the period covered by the Budget to be timely paid in the ordinary course of business pursuant to, and in accordance with, the Budget. The Budget will allow the Debtors to operate in these Chapter 11 Cases and pay postpetition administrative expenses as they come due subject to the terms of this Interim Order.

F. **Immediate Need for Funding**. Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the Initial Draw and authorized use of Cash Collateral. As a result of the Debtors' financial condition, which has been deteriorating for an extended period of time prior to the Petition Date, the use of Cash Collateral alone will be insufficient to meet the Debtors' immediate postpetition liquidity needs. Debtors' ability to maintain business relationships with their vendors, suppliers and customers, pay their employees, purchase materials and deliver inventory, and otherwise finance their operations is essential to the Debtors' continued viability. In the absence of the DIP Financing and the authorization by this Court to use Cash Collateral, the Debtors' businesses and estates would suffer immediate and irreparable harm, including, without limitation, a cessation of substantially all of their operations. The Debtors' ability to finance their operations and their Chapter 11 cases is essential to preserving the going concern value of the Debtors' businesses and ultimately maximizing the value of their estates for the benefit of all stakeholders.

G. **No Credit on More Favorable Terms**. Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the Debtors are unable to obtain sufficient financing from sources other than from the Lender on terms and subject to conditions more favorable than under the DIP Financing and the Loan Documents, and are not able to obtain unsecured credit allowable as an administrative expense under Sections 364(b) and 503(b)(1) of the Bankruptcy Code. The

Debtors are also unable to obtain secured credit under Sections 364(c)(1), 364(c)(2) and 364(c)(3) for the purposes set forth in the Fifth Amendment without granting to the Lender, subject to the Carve Out, (i) a superpriority claim under Section 364(c)(1), (iii) automatically perfected liens under 364(c)(2), 364(c)(3) and 364(d), and (iii)  the other protections set forth in the Motion, in each case under the terms and conditions set forth in this Interim Order, the Fifth Amendment, and the Loan Documents.

H. **Use of Cash Collateral**.  An immediate and critical need exists for the Debtors to use the Cash Collateral (in addition to the DIP Financing) in accordance with the Budget to continue to operate their businesses, pay wages, maintain business relationship with vendors, suppliers and customers, make capital expenditures, make adequate protection payments, generally conduct their business affairs so as to avoid immediate and irreparable harm to their estates and the value of their assets, and afford the Debtors adequate time to effectively reorganize.

I. **Good Cause; Best Interests**.  The Lender has indicated a willingness to provide post-petition secured financing but solely on the terms and conditions set forth in this Interim Order, the Fifth Amendment, the Loan Documents and the Budget.  After considering all of their alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the DIP Financing provided by Lender and the Lender's authorization to use Cash Collateral represents the best financing presently available to the Debtors.  Based upon the pleadings and proceedings of record in the Chapter 11 Cases, the terms and conditions of the DIP Financing are fair and reasonable, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.  Absent granting the relief sought by this Interim Order, the Debtors' business, properties and estates will be immediately and irreparably harmed.  Accordingly, good cause has been shown and that entry of this Interim Order is in the best interest of the Debtors' estates and consummation of the DIP Financing and authorization of the use of the Collateral (including the Cash Collateral) in accordance with this Interim Order, the Fifth Amendment, and the other Loan Documents are in the best interests of the Debtors' estates and consistent with the Debtors' fiduciary duties.

J. **Good Faith**.  Based upon the pleadings and proceedings of record in the Chapter

11 Cases, (i) the Initial Draw (defined below), the Budget, and the terms of this Interim Order have been negotiated in good faith and at arm's length among the Debtors and the Lender, and (ii) any credit extended, loans made, and other financial accommodations extended to the Debtors by the Lender during the Interim Period (defined below) have been extended, issued or made, as the case may be, in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rules 4001(b)(2) and 9006.  Absent entry of this Interim Order, the Debtors' businesses and estates will be immediately and irreparably harmed.  This Court concludes that good cause has been shown and that entry of this Interim Order is in the best interest of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' businesses and enhance the Debtors' prospects for a successful reorganization.

Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**:

1.      **Approval of Interim Order**.  The Motion is approved on the terms and conditions set forth in this Interim Order.  Any objections that have not previously been withdrawn are hereby overruled.  This Interim Order shall become effective immediately upon its entry and shall remain in effect until entry of a final order on the Motion (the "Interim Period").

2.      **Approval of the Fifth Amendment**.  The Debtors are hereby authorized to enter into the Fifth Amendment (in the form attached hereto as **Exhibit B**) and such additional documents, instruments and agreements as may be required or requested by the Lender to implement the terms or effectuate the purposes of this Interim Order.  The Debtors are authorized to comply with and perform all of the terms and conditions contained therein, and directed to repay amounts borrowed, together with interest thereon and any other outstanding DIP Obligations (as defined herein) to the Lender in accordance with and subject to the terms and conditions set forth in the Fifth Amendment and this Interim Order.

3.      **Authorization to Borrow/Use of Cash Collateral**.  Upon execution of the Fifth

Amendment and other Loan Documents, (a) Debtors are immediately authorized to borrow from the Lender up to an aggregate principal amount of $1,100,000 (plus interest, fees and other expenses and amounts provided for in the Fifth Amendment), subject to and in accordance with the terms of this Interim Order and the Fifth Amendment (the "Initial Draw"), and (b) Debtors are authorized to use the Initial Draw and the Collateral (including the Cash Collateral) in accordance with the terms of the Fifth Amendment, this Interim Order, and the Budget, subject to the Permitted Variance.  In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized, and the automatic stay imposed by Section 362 of the Bankruptcy Code is lifted to the extent necessary, to perform all acts and to make, execute and deliver all instruments and documents and to pay all fees that may be reasonably required or necessary for the Debtors' performance of their obligations under the Fifth Amendment and this Interim Order, including, without limitation:

    a)    the execution, delivery and performance of the Fifth Amendment, and any agreements or instruments contemplated thereby;

    b)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the Loan Documents as necessary and appropriate to implement this Interim Order, it being understood that no further approval of the Court shall be required for amendments, waivers, consents or other modifications to and under the Loan Documents or the Fifth Amendment that do not materially and adversely impair the Debtors' or their estates' rights thereunder; and

    c)    the performance of all other acts required under or in connection with the Loan Documents other than those conditioned on the entry of the Final Order.

4.    **Cash Collateral**.  The cash and cash equivalents of the Debtors, whenever or wherever acquired, and the proceeds of all Collateral (defined below) pledged to the Collateral Agent on behalf of the Lender, constitutes the cash collateral of the Lender (the "Cash Collateral"). The Debtors may use the Cash Collateral to pay ordinary and necessary business and administrative expenses in accordance with, and limited by, the Budget subject to: (i) the rights of the Lender upon the occurrence of an Event of Default; and (iii) the rights of the Lender otherwise

GARMAN TURNER GORDON
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000

available to the Lender under the Bankruptcy Code. The Debtors will not, without the prior written consent of Lender, engage in the use of the Cash Collateral of the Lender other than to pay ordinary and necessary business and administrative expenses as set forth in, and limited by, the Budget. During the Interim Period, all Cash Collateral shall be subject to the first priority priming liens on the Collateral in accordance with Section 364(d), and shall be subject to the terms of this Interim Order.

5. **Maturity and Termination.** Debtors' authority to use the Initial Draw or any Collateral, including Cash Collateral, and any commitment to make additional advances under the DIP Financing, shall each terminate, subject to the Carve Out, upon the earlier to occur of (a) the earlier of (x) the effective date of a plan of reorganization with respect to the Debtors or (y) the date that is one hundred eighty (180) days after the Petition Date (the "Maturity Date"), and (b) the date five (5) days after the Lender delivers a written notice of Event of Default to the Debtors, the Special Committee, the Committee, and the U.S. Trustee, unless any such event is waived, cured or extended with the written consent of the Lender.

6. **Interest on DIP Financing**. The rate of interest to be charged on advances under the DIP Facility shall be 4.00% per annum and shall accrue as payment in kind except the Lender's fees and costs, which shall be paid as set forth in the Fifth Amendment; provided, however, that, notwithstanding anything in this Order to the contrary, the Lender shall not receive interest payments on the Prepetition Obligations during the Interim Period.

7. **Payment of DIP Fees and Expenses**. The Debtors are authorized to pay all costs, expenses and any other fees or other amounts payable under the terms of the Fifth Amendment and the Loan Documents and all other reasonable, documented, out-of-pocket costs and expenses of the Lender in accordance with the terms of the Loan Documents (including, without limitation, the costs and expenses of legal counsel). None of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Copies of any invoices (in summary form and redacted, as necessary, for privileged, confidential or otherwise sensitive information) with respect to such fees, expenses and costs shall be provided

upon request to the U.S. Trustee, counsel for the Debtors, the Chief Restructuring Officer and counsel to the Committee, and each such party shall have ten (10) days from the date of such notice within which to object in writing to such payment.

8. **Chief Restructuring Officer**.  Each Debtor shall retain Nicholas Rubin as its Chief Restructuring Officer to hold the sole power under the applicable Debtor's organizational documents to manage such Debtor's operations, business affairs, and bankruptcy cases and to cause such Debtor to comply with its obligations under this Interim Order.  The identity and retention of any replacement Chief Restructuring Officer shall be subject to the Lender's prior written consent.  The Chief Restructuring Officer may not be removed without the Lender's prior written consent unless this Court orders the removal of the Chief Restructuring Officer for cause. The retention of the Chief Restructuring Officer and the engagement of an affiliated advisory firm to assist the Chief Restructuring Officer shall be conditions precedent to any approvals of any subsequent Budgets, draws under the DIP Facility and the Lender's consent to the use of Cash Collateral.  The Debtors shall authorize the Chief Restructuring Officer, on the one hand, and the Lender, and their respective counsel, on the other hand, to communicate directly with each other regarding the Debtors, the DIP Facility, the plan process and any other aspect of the Chapter 11 Cases.

9. **Validity of Loan Documents**.  Upon execution and delivery of the Fifth Amendment, the Fifth Amendment and Loan Documents shall constitute, and are hereby deemed to be the legal, valid and binding obligations of the Debtors party thereto, enforceable against each such Debtor in accordance with the terms of the Loan Documents for all purposes during the Interim Period to the extent of the Initial Draw.  The Initial Draw will be used only to fund postpetition administrative expenses, working capital needs, and to pay such other amounts as are required or permitted to be paid pursuant to the Fifth Amendment, this Interim Order and any other orders of this Court, all subject to, limited by, and in accordance with, the Budget.  No obligation, payment, transfer or grant of security under the Fifth Amendment or this Interim Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or

counterclaim.

10.      **Superpriority Claim**.  In accordance with Section 364(c)(1) of the Bankruptcy Code, the Lender shall have superpriority administrative expense claim for the DIP Obligations under this Interim Order (the "Superpriority Claim") against the Debtors, with priority in payment over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, any and all administrative expenses or other claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including pursuant to Sections 105, 326, 328, 330, 331, 364, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 and 1114 or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to Section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, that the Superpriority Claim (i) shall be subject to the Carve Out and (ii) shall not have recourse to the proceeds of any Avoidance Actions (as defined below).   For purposes of Section 1129(a)(9)(A) of the Bankruptcy Code, the Superpriority Claim shall be considered administrative expenses allowed under Section 503(b) of the Bankruptcy Code against each Debtor on a joint and several basis, and shall be (subject to the Carve Out) payable from and have recourse to all prepetition and postpetition property of the Debtors other than the proceeds of the Avoidance Actions.  Except as set forth in this Interim Order and the Final Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases.

11.      **DIP Liens**.  As security for all DIP Obligations pursuant to this Interim Order, the Lender is hereby granted (effective upon the date of this Interim Order, without the necessity of the execution by the Debtors or the filing or recordation of liens, security agreements, lock box or control agreements, financing statements, or any other instruments or otherwise) valid, binding and fully perfected, security interests in and liens (the "DIP Liens") upon all present and after-acquired property of the Debtors of any nature whatsoever, real or personal, tangible, intangible, or mixed, now existing or hereafter acquired, whether existing prior to the Petition Date or arising thereafter, and all other property of the estate within the meaning of Section 541 of the Bankruptcy

Code, including, without limitation, the Cash Collateral and the Prepetition Collateral, the "Collateral"), subject only to the payment of the Carve Out and *excluding bankruptcy claims and causes of action arising under Sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code and state law equivalents and the proceeds thereof* (collectively, the "Avoidance Actions"), consisting of:

a)    First Lien on Unencumbered Property.  Pursuant to Section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior lien upon and security interest in all of the Debtors' right, title and interest in, to and under all Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the Petition Date; provided, however, that all parties in interest reserve their rights with respect to liens on commercial tort claims for the Final Hearing;

b)    Liens Junior to Certain Other Liens.  Pursuant to Section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien upon and security interest in valid, binding, enforceable, and perfected junior liens on all property subject to a valid, binding, perfected, enforceable, and non-avoidable lien immediately prior to the Petition Date (an "Existing Lien"); and

c)    Consensual Priming Liens.  Pursuant to Section 364(d) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority senior lien upon and security interest in all of the Debtors' right, title and interest in, to and under all Collateral senior to the Lender's Prepetition Liens.

The DIP Liens will not be subject to challenge and the Collateral will be free and clear of other liens, claims and encumbrances, except any Existing Lien.  Upon entry of this Interim Order, the DIP Liens shall be deemed to be automatically perfected as of the Petition Date, without the need for further action of any kind; provided, however, that if the Lender determines, in its sole discretion, to file any financing statements, notice of liens, mortgages or any other similar instruments, the Debtors will cooperate and assist in such filings and the automatic stay shall be lifted without the need for further order of this Court to allow such filings.  The DIP Liens shall not encumber the Debtors' interests in any Avoidance Actions or the proceeds of any Avoidance

Actions.

12. **No Waiver of Provisions Relating to Prepetition Obligations; Reservation of Rights**. Except as otherwise specifically provided in this Interim Order or the Fifth Amendment, nothing contained in this Interim Order shall be deemed a waiver or constitute the Lender's consent to the modification of any provision contained in the Loan Documents.

13. **Carve Out**.

a)      The DIP Liens and Superpriority Claim granted under this Interim Order shall be subject to the prior payment of the following amounts (the "Carve Out"): (i) in an amount not to exceed the amount set forth for such period in the accrual portion of the Approved Budget, the aggregate amount of any allowed but unpaid fees, costs and expenses of the Debtors' counsel, counsel to the Committee, the Chief Restructuring Officer and its advisors, and the fees payable to the Special Committee for the Debtors, all of which are payable under Sections 330, 331, or 363(b), or other provision of the Bankruptcy Code, as applicable, and were accrued or incurred prior to the Event of Default Notice Date; *plus* (ii) such fees, costs and expenses accrued or incurred on or after the Event of Default Notice Date in an aggregate amount not to exceed $100,000.00; *plus* (iii) the payment of fees pursuant to 28 U.S.C. § 1930.

b)      Nothing contained herein is intended to constitute, nor should be construed as consent to, the allowance of any professional's fees, costs or expenses and shall not affect the right of the Debtors, the Committee, the Lender, the U.S. Trustee, or any other party-in-interest to object to the allowance and payment of any amounts incurred or requested under Sections 330 and 331, 363(b), 503(b), or as otherwise provided under the Bankruptcy Code.

c)      No portion of the Carve Out, DIP Financing, Collateral, or Cash Collateral shall include, apply to, or be available for, any fees, costs or expenses incurred by any party, including the Debtors or Committee, with respect to (i) the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Lender in any capacity, including, without limitation, challenging the amount,

validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the obligations of the Debtors arising under the Fifth Amendment or this Interim Order, the Prepetition Obligations, the Loan Documents, or the security interests and liens securing or arising pursuant to any of the foregoing, or (ii) asserting or prosecuting any claims or causes of action or taking any other actions against the Lender in any capacity; provided, however, that up to $45,000, or such other amount as is agreed to in writing or pursuant to entry of the Final Order, shall be made available to the Committee to fund a reasonable investigation in respect of the stipulations set forth in Paragraph D of this Interim Order ("Investigation Carve Out").

14.    **Committee Review Right**.

a)    The Committee shall have until the later of (a) forty-five (45) days from appointment of such Committee or (b) sixty (60) days from the Petition Date (the "Review Termination Date") to investigate the validity, perfection and enforceability of the Prepetition Liens and the Prepetition Obligations, or to assert any other claims or causes of action against the Lender with respect to the Prepetition Liens or the Prepetition Obligations, unless extended or modified by written agreement or pursuant to the Final Order.

b)    If the Committee, subject to having obtained the requisite standing, determines that there may be a challenge to the Prepetition Liens under Paragraph 14, the Prepetition Obligations, or a claim or cause of action against the Lender with respect to the Prepetition Liens or the Prepetition Obligations by the applicable Review Termination Date, then upon three (3) days' written notice to the Debtors and the Lender, such Committee shall be permitted to file and prosecute an objection or claim related thereto (each, a "Challenge"), and shall have only until the applicable Review Termination Date to file such objection or otherwise initiate an appropriate action on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action; provided, however, that nothing contained in the Loan Documents or this Interim Order shall be deemed to confer standing on the Committee to commence a Challenge, and nothing

in an Approved Budget or Paragraph 13 shall be deemed the Lender's approval or consent for the use of any of the DIP Loan proceeds or Cash Collateral to fund a Challenge in an amount in excess of the Investigation Carve Out.

c)    If a Challenge is not filed on or before the Review Termination Date, then, without further action by any party or any further order of this Court: (i) the agreements, acknowledgements and stipulations contained in this Interim Order shall be deemed to be immediately and irrevocably binding on the Debtors and the Debtors' estates, the Committee, all parties-in-interest, and any and all successors-in-interest as to any of the foregoing, and any the Debtors' estates, the Committee, and all other parties-in-interest and any and all successors-in-interest thereto shall thereafter be forever barred from bringing any Challenge; (ii) the Prepetition Liens and security interests of the Lender shall be deemed to constitute valid, binding, enforceable and perfected liens and security interests not subject to avoidance or disallowance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (iii) the Prepetition Obligations shall be deemed to be finally allowed claims for all purposes in the Chapter 11 Cases and any subsequent chapter 7 cases, in the amounts set forth in Paragraph D and shall not be subject to challenge by any party-in-interest as to validity, priority or otherwise; and (iv) the Debtors shall be deemed to have released, waived and discharged the Lender (whether in its prepetition or postpetition capacity), from any and all claims and causes of action related to the extent, validity, priority, or enforceability of the Prepetition Liens or Prepetition Obligations.

d)    Notwithstanding anything to the contrary herein: (i) if any such Challenge is timely commenced, the stipulations contained in this Interim Order shall nonetheless remain binding on all parties-in-interest and preclusive except to the extent that such stipulations are expressly and successfully challenged in such Challenge; and (ii) the Lender reserves all of its rights to contest on any grounds in connection with any Challenge.

15.    **Restrictions on Granting Post-Petition Liens**.  Other than the Carve Out, or as otherwise provided in this Interim Order or the Fifth Amendment, no claim having a priority superior or *pari passu* with those granted by this Interim Order to the Lender shall be granted or

permitted by any order of this Court heretofore or hereafter entered in the Chapter 11 Cases, while any portion of the DIP Financing (or refinancing thereof) or any other Obligation is outstanding. Except as expressly permitted by this Interim Order and the Loan Documents, the Debtors will not, at any time during the Chapter 11 Cases, grant liens or security interests in the Collateral to any other parties pursuant to Section 364 of the Bankruptcy Code or otherwise.  Unless all Obligations shall have indefeasibly been paid in full in cash (or as otherwise provided in this Interim Order and the Loan Documents), the Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Debtors to use the DIP Financing and Cash Collateral under this Interim Order, if any of the Debtors seeks, or if there is entered, any modification or extension of this Interim Order without the prior written consent of the Lender.

16.    **Automatic Effectiveness of Liens**.  The DIP Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtors or Lender without the necessity of execution by the Debtors, or the filing or recordation, of any financing statements, security agreements, or other documents or the taking of any other actions.  All Collateral shall be free and clear of other liens, claims and encumbrances, except as provided in the Loan Documents and this Interim Order for so long as any portion of the DIP Financing (or refinancing thereof) or any Prepetition Obligation is outstanding.  Debtors are hereby authorized and directed to execute and deliver to the Lender such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents as the Lender requests, and the Lender is hereby authorized to file or record such documents in their respective discretion without seeking modification of the automatic stay under Section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

17.    **Automatic Stay and Remedies**.  As provided herein, subject only to the provisions of the Fifth Amendment, the provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Lender, following the fifth day following an Event of Default Notice Date and during the continuance of any Event of Default thereafter, all rights

and remedies provided for in the Loan Documents and this Interim Order without further order of this Court.  Following an Event of Default Notice by the Lender, the Debtors, the Committee, and the U.S. Trustee shall be entitled to seek an emergency hearing exclusively before this Court.  This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

18.    **Plan Covenants**.  The Debtors shall satisfy the required performance obligations below (each a "Plan Process Covenant") on or before the following dates (each a "Milestone Date"):

      a)  on or before April 10, 2020, Debtors shall deliver to Lender a draft disclosure statement and plan of a reorganization;

      b)  on or before April 17, 2020, Debtors shall file a disclosure statement and plan of a reorganization;

      c)  an order approving a disclosure statement shall be entered no later than May 22, 2020; and

      d)  the effective date of a plan of reorganization shall occur no later than June 30, 2020.

The failure to satisfy any required Plan Process Covenant by the applicable Milestone Date shall be an Event of Default under the Fifth Amendment unless extended by written consent of the Lender.

19.    **No Creation or Evidence of Liability to Third Parties or Alter Ego Relationship**.  The Lender shall not be found or deemed to be an alter ego of any of the Debtors, in a partnership of any kind with any of the Debtors, in a principal-agent relationship with any of the Debtors or otherwise liable for any liabilities of any of the Debtors, and none of the Debtors shall be found or deemed to be a mere instrumentality of the Lender, as a result of the Lender deciding to advance loans to the Debtors, negotiating and entering into the Fifth Amendment, the Loan Documents, and this Interim Order, administering the DIP Financing, consenting to the Budget or any future Budget, or taking any other actions permitted by this Interim Order, the Fifth Amendment, or other Loan Documents, and no such action (or conduct taken in furtherance of or

comprising an integral part of any such action) shall be admissible in any proceeding as evidence that the Lender is the alter ego, partner, principal of, or otherwise liable for any liability of, any of the Debtors or that any Debtor is a mere instrumentality of the Lender.

20. **Binding Effect**. Subject to Paragraph 14, the provisions of this Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtors, the Committee, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors).  To the extent permitted by applicable law, this Interim Order shall bind any trustee hereafter appointed for the estate of any of the Debtors, whether in these Chapter 11 Cases or in the event of the conversion of any of the Chapter 11 Cases to a liquidation under chapter 7 of the Bankruptcy Code.  Such binding effect is an integral part of this Interim Order.

21. **Survival**.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order: (a) confirming any plan of reorganization or liquidation in these Chapter 11 Cases (and, to the extent not satisfied in full in cash, the DIP Obligations shall not be discharged by the entry of any such order pursuant to Section 1141(d)(4) of the Bankruptcy Code), (b) converting any of these Chapter 11 Cases to a chapter 7 case, or (c) dismissing any of these Chapter 11 Cases.   The terms and provisions of this Interim Order, as well as the DIP Obligations and the DIP Liens granted pursuant to this Interim Order and the Loan Documents, shall continue in full force and effect notwithstanding the entry of any such order.  The DIP Obligations and the DIP Liens shall maintain their priority as provided by this Interim Order and the Loan Documents, and to the maximum extent permitted by law, until all of the DIP Obligations are indefeasibly paid in full and discharged.  In no event shall any plan of reorganization be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth in the Loan Documents without the written consent of the Lender.  Unless all DIP Obligations shall have indefeasibly been paid in full, it shall constitute an Event of Default and terminate the right of the Debtors to use Cash Collateral under this Interim Order if Debtors seek, or if there is entered, (x)

any modification or extension of this Interim Order without the prior written consent of the Lender, or (y) an order converting or dismissing any of these Chapter 11 Cases.

22.  **Modifications of Loan Documents**.  The Debtors and the Lender are hereby authorized to implement, in accordance with the terms of the Loan Documents, any non-material modifications of the Loan Documents without further order of this Court.  The Lender is authorized, subject to and in accordance with the terms of the Fifth Amendment, to designate or appoint a successor Administrative Agent without the need for any further approval of the Bankruptcy Court.

23.  **Protection Under Section 364(e)**.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect the (i) validity of any DIP Obligations owing to the Lender incurred during the Interim Period prior to the actual receipt by Lender of written notice of the effective date of such reversal, modification, vacation or stay, or (ii) validity or enforceability of any claim, lien, security interest or priority authorized or created hereby or pursuant to the Loan Documents with respect to any DIP Obligations arising from the Initial Draw.  Notwithstanding any such reversal, modification, vacation or stay, any use of Cash Collateral or the incurrence of DIP Obligations by the Debtors during the Interim Period prior to the actual receipt by Lender of written notice of the effective date of such reversal, modification, vacation or stay, shall be governed in all respects by the provisions of this Interim Order and the other Loan Documents, and the Lender shall be entitled to all of the rights, remedies, protections and benefits granted under Section 364(e) of the Bankruptcy Code, this Interim Order, and the Loan Documents with respect to all uses of Cash Collateral and the incurrence of DIP Obligations during the Interim Period.

24.  **Choice of Law; Jurisdiction; Standing**.  The DIP Financing and the Loan Documents (and the rights and obligations of the parties thereto) shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York, and, to the extent applicable, the Bankruptcy Code.  This Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, either the DIP Financing or the Loan Documents.  The Lender shall have standing, as a party-in-interest under Section

1109(b) of the Bankruptcy Code, to raise and appear and be heard on any issue in the Chapter 11 Cases.

25. **Findings of Fact and Conclusions of Law**. This Interim Order constitutes, where applicable, findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the entry thereof. Findings of fact shall be construed as conclusions of law, and conclusions of law be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

26. **Interim Order Effective**. This Interim Order shall take effect immediately notwithstanding anything to the contrary prescribed by applicable law or Bankruptcy Rules 4001 and 6004.

27. **Controlling Effect of Interim Order**. To the extent any provision of this Interim Order conflicts or is inconsistent with any provision of the Motion or any Loan Document, the provisions of this Interim Order shall control. This Interim Order shall only be in effect until entry of the Final Order. Subject to paragraph 23 of this Interim Order, the Final Order may supersede, overrule, modify, or otherwise amend any relief granted in this Interim Order.

28. **Final Hearing**. The hearing to consider the entry of a Final Order authorizing and approving the Motion is hereby scheduled for **March 27, 2020** at **10:30 a.m.** No less than seven (7) days before the Final Hearing, Debtors shall file on the docket a conformed copy of the Credit Agreement which incorporates the Fifth Amendment. Objections to the entry of a Final Order shall be in writing, comply with LR 9014, and be filed no later than **March 23, 2020**. Replies to any objections shall be filed no later than **March 26, 2020** at **12:00 p.m.**

29. **Retention of Jurisdiction**. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Interim Order.

**IT IS SO ORDERED.**

Prepared and submitted by:

GARMAN TURNER GORDON LLP

By: */s/ Gabrielle A. Hamm*
      GREGORY E. GARMAN, ESQ.
      GABRIELLE A. HAMM, ESQ.
      TERESA M. PILATOWICZ, ESQ.
      7251 Amigo Street, Suite 210
      Las Vegas, Nevada 89119
      [Proposed] *Attorneys for Debtors*

## LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court waived the requirement of approval under LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

| | |
|---|---|
| Edward M. McDonald, Esq.<br>Office of the United States Trustee | Approved |
| Samuel Schwartz, Esq.<br>Counsel for Alpha Bravo Holding Company, Inc. | Approved |
| Cathrine M. Castaldi, Esq.<br>Amanda Perach, Esq.<br>Counsel for Ad Hoc Committee of Select Unsecured Creditors | Approved |
| Thomas H. Fell, Esq.<br>Counsel for North American Production Sharing, Inc. | Approved |

☐ I certify that this is a case under chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

### # # #

4836-9283-3205, v. 6

GARMAN TURNER GORDON
7251 Amigo Street, Ste. 210
Las Vegas, NV 89119
725-777-3000